May it please the Court, my name is Gwen Ellen Janoff and I represent the Honorable Gary LaRance, the Judge of the Tribal Court of the Colorado Indian Tribes. I also represent the Chief Clerk of the Court. I've been given 15 minutes. I believe the United States is going to use up to five of those and I'd like to reserve one minute. Judge LaRance is appealing from Judge Campbell's decision that the Tribal Court did not have subject matter jurisdiction over Robert Johnson under the Montana test. The District Court used the wrong standard and he applied it to the wrong record. For starters, this case is not about an automobile accident on tribal or fee land. It's a case about an automobile accident on tribal or fee land. It's not a case where someone is seeking to apply the Lanham Act or some other federal act in tribal court. And it's not a case where you have to balance legitimate tribal interests against legitimate state interests in law enforcement as was the case in Strait. This case involves a lease of Indian trust land and the failure of the lessee and its sole owner, operator, stockholder. If we agree that the Tribal Court has inherent authority, we don't have to get to the Montana analysis? Yes, absolutely. We believe that the Court under Marion has inherent authority to exclude anyone, members, nonmembers, but nonmembers from the tribe. And it can impose conditions on that, on their presence once it lets them in. Let me make sure I understand your answer to Judge Callahan's question. It seems to me that there is an analytical difference between conduct that occurred within the timeframe of the lease and conduct that occurred after the lease expired. Your answer to her question was we don't need to get to the Montana test because the tribe has inherent authority here. But that may be true with regard to the trespass after the lease expired, but don't we have to look to the first prong of Montana with regard to conduct that occurred under the consensual relationship of the lease? Well, I would argue initially that you don't, because the Marion right to exclude and impose conditions on admission to the reservation includes the corollary to exclude. So you don't even have to look at the consensual relationship. But even under the Montana first prong, we meet that. I mean, did that answer your question, Judge Callahan? Not really, because I'm, it seems to me that if you look at the lease first, you have the corporation and you have Mr. Johnson as an individual. Your theory and the tribal court's finding by piercing the corporate veil was that they had jurisdiction over both. The corporation with regard to the contract, the lease, and Mr. Johnson because, in effect, he was the alter ego of the corporation, its agent in fact, and engaged in various breach of contract actions himself once that veil has been pierced. May I, Your Honor? Yeah, please. The court did not pierce the veil for purposes of jurisdiction. The court only pierced the veil for purposes of liability once he determined that he had jurisdiction over Mr. Johnson personally. He held one hearing on the jurisdictional issue, at which point he decided under Montana he had the authority over the jurisdiction over both parties. But does he get personal jurisdiction over Johnson prior to piercing the corporate veil? Well, under Montana he does. Okay. That's why I'm having a hard time with your first answer to Judge Callahan's question, because I don't think it's a simple yes, Montana applies, no, it doesn't. I don't think it's quite that simple. No, I don't think anything here is quite that simple. Well, that's why we have you here. Yeah, exactly. But under Marion, even putting Montana aside, if the tribe gave both Waterwheel and Mr. Johnson the right to be on that property, then under Marion it had the right to exclude and evict if the conditions of his possession were violated. And they were certainly violated during the terms of the lease by not paying. And they were – and, I mean, there's no question once the lease ended, he was – they were all in trespass. But would the tribe have had the authority to exclude him under the terms of the lease prior to the year 2000, assuming that Waterwheel prior to that time was in full compliance with the lease? No, I think the Marion power to exclude, once you put the conditions on, if those conditions are met, there's no real power to evict once – there's no power to exclude if the conditions are satisfied. If the conditions fail to be satisfied, at that point you have the power to exclude as a remedy. Okay. So he would have had a contractual right under the first prong of Montana to continue his activities on the reservation up to 2000 when the acts of breach occurred. Is that what you're saying? No. He – there's no basis for saying he personally had a contractual obligation. You don't think he assumed the obligations under the lease when he purchased all the assets of the corporation? I believe that that was his consensual – his – the genesis of his consensual relationship. He's not a – he's not a party to the lease. I cannot argue that he is a party to the lease. So he – so neither he nor the tribe complied with the provision, the assumption clause of the lease, which required a written assumption if there were a transfer or assignation of the lessee's rights under the lease. Is that correct? Honestly, I think if he signed as a corporate officer, the contractual assumption, the contractual terms, he wasn't a party to the lease. Well, but doesn't the lease contain a provision which governs a subsequent assignment of the lease? I think the lease contains many provisions that govern here – that govern Mr. Johnson's assignment. Counsel, it's just a simple yes or no question. Did I or did I not see in the lease a paragraph that talks about assigning rights under the lease? I believe it was there, Your Honor, but I cannot recall the specific provision. All right. Let me ask a different question. Was there any evidence introduced at trial that's in the record that Mr. Johnson actually signed such an assumption of obligations under the lease? I'm not aware of any. But I also have to say I'm not aware of any evidence of that kind in the record, but I was neither the trial attorney nor the attorney before Judge Campbell. So while I have done my very best to digest the record, I can't. I didn't see anything, any such evidence. And there doesn't appear to be any argument in any of the briefs that Mr. Johnson assumed the obligations under the lease simply by purchasing the assets of the corporation. Not personally under the lease. Okay. But we believe emphatically that his personal act in purchasing a corporation whose sole asset was that lease and whose sole purpose was to conduct business and make money on tribal land individually entered into a consensual relationship with the tribe. So the consensual relationship is imputed as a matter of law by virtue of his actions? Yes. Is that it? Yes. His act in purchasing that corporation that had one sole purpose and that sole purpose related directly, the nexus was directly with the tribal land and to extract value from that tribal land, that was his personal consensual relationship. And the test used below was incorrect. I mean, the test is not whether you knowingly voluntarily consent to submit to the jurisdiction of the tribe. It's whether you enter into a consensual relationship that has the effect of submitting you to jurisdiction. Shall I move on? Yes, please. We covered an awful lot, I believe, of what I was going to say. I think... Do you want to save some time for rebuttal? Yes. Does the Court have any questions? I mean, specifically, I'm very concerned and I think... I think you just heard a few questions. Did you say, does the Court have any easier questions? Was that what you wanted to ask? Was the issue as to the second Montana exception preserved for this appeal? My understanding is that it was, that it was raised in a brief, but it was yes. The Tribal Appellate Court certainly considered both exceptions. Yes, it did. And my, and Mr. Volman, the briefs in the district court also mentioned it, but it wasn't the focus. But it was preserved. Now, I know that you're saying that the district court was wrong in considering the subjective mindset of Johnson, but are you asserting that the district court abused its discretion in accepting the two declarations by Johnson, or that the allegations, even if accepted, do not affect the tribe's jurisdiction? So what exactly are you saying? Well, the declarations were submitted in support of the application for a TRO, not on the merits of whether or not there was jurisdiction. And there was no motion to strike, although, as we pointed out in our district court brief, a motion to strike would have been inconsistent with the court's rules. So I do not think for purposes of the jurisdictional ruling, the ultimate judgment of the district court, they should not have been considered. They, those, they were not presented to the tribal court. And the standard is whether the facts found and conclusions reached on the record before the tribal court supported jurisdiction. And that doesn't mean that you get to come in with, after the fact, subjective statements about what you thought you were doing that weren't, I mean, it clearly wasn't before the tribal court. So he didn't testify to any of the things contained in those declarations when he said that? In the tribal court? I believe that he testified that he had, that his was under the impression that he would be dealing only with the BIA and only with Riverside County in terms of the building matters. To the best of my knowledge, and I listened to the entire tape of the oral argument, he never once mentioned the Denham's name or said that that was what he was told at the time that he purchased the company. I think if it had been a really big deal, if it had been presented as the kind of argument that's being presented here, both of the tribal courts would have addressed it. I mean, certainly the court of appeals would have in that extensive conversation. So is that your subjective intent or is that what the record shows? I beg your pardon? Well, you're saying the court couldn't take into consideration the subjective intent of Mr. Johnson, but now it seems to me that you're giving us your subjective intent, why you think the court did what it did or it didn't do. I believe that what the court did and didn't do is manifested in the tribal court decisions and most comprehensively in the court of appeals decisions. Well, it just seems that your strongest argument is considering the subjective intent isn't relevant for tribal court jurisdiction. Yes. Not necessarily that they were admitted in error, but that the conclusion of the trial judge that subjective intent was, you know, carried the day for Johnson is what you're disputing. Well, admission versus non-admission is a technical evidentiary issue. I don't think they should have been considered, whether they were admitted or not. They were not before the tribal court. But there was no objection, huh? There was an objection in the brief. In Judge LaRance's initial brief, there was a statement that the district. Was there an objection below? That's what I – before Judge Campbell. Oh, okay. In the initial brief to Judge Campbell, Judge LaRance said that – and that's where he went into the argument about how to move to strike would violate the District of Arizona's procedural rules. But he said these were not properly admitted and they shouldn't be considered. Now, you have a motion before us to take judicial notice of some additional evidence. Is that essentially in response, if we're going to consider the declarations, then we should take judicial notice of what you've asked us to note? Your Honor, that's not my motion. That is the tribe's motion. I'm sorry. And I don't represent the tribe. The tribe. I only represent the tribal court. All right. And I suppose what's good for the goose is good for the gander, but my preference, honestly, would be no declarations. None of the stuff. No declarations, and therefore, it seems to me no judicial notice because that's supplementing the record that was not before the tribal court. I understand, Your Honor. I'm simply expecting – expressing a preference.  I understand. Thank you, counsel. Thank you. Thank you. Good morning, Your Honor. It's John Schultz from the United States. I don't know how specifically we're doing on time. We had agreed that. Well, I mean, we've got some tricky issues here. I'm going to try and hold you to your time, but depending on questions from the bench, I'm willing to go over a little. Thank you, Your Honor. The issues in this case are important to the United States and to the federal policy to promote tribal self-government and the development of tribal courts, and we very much thank the court for the opportunity to address it. They're important to us, too. We want to get it right. That's why we're having this conversation. Your Honor, there's two sets of issues in this case. There's the issues that go to whether the tribe possessed inherent sovereignty to regulate Walter Wheel and Johnson's use and occupancy of tribal land, and that goes to the interpretation of Montana and the other Supreme Court cases. And then there's a separate set of questions about whether the provisions of the federal leasing regulations and the lease in this case that establish enforcement authority in the Secretary somehow constitute a divestiture or a waiver of inherent authorities, and those are really separate issues. The Supreme Court has held that there will be no divestiture or waiver will be found unless it's clearly expressed. We submit that the district court correctly reviewed the provisions of the lease and the leasing regulations and held that there was no divestiture or waiver. Unless the court has specific questions about provisions in the lease or the leasing regulations, I'd like to focus the rest of my remarks on the questions of inherent sovereignty. Let me just rephrase what you said to make sure I understood it. Essentially what you're saying is the Secretary's statutory authority does not supplant the tribe's inherent authority. That's correct, Your Honor. And the rule is it won't be interpreted to supplant authority unless it's clearly expressed by Congress, and we submit that there was no clear expression to supplant. So the issue then is the fundamental issue about the inherent sovereignty under the Supreme Court precedent. And what I'd like to ask the court to do is to step back for a moment and revisit the question of the power to exclude. And as we argue in our brief, the district court's misunderstanding of or failure to appreciate essentially the independent nature of the power to exclude. Well, perhaps, too, you can incorporate in that if we were to accept the inherent authority argument, do we have to get into Montana at all? Well, Your Honor, Montana is about when tribes have inherent authority. Do we have to get into the exceptions, I guess? Well, the Montana exceptions address in a certain circumstance when tribes can regulate, and we would say Montana had three parts. The first part of Montana was to reaffirm what the court had held way back in 1832 in Worcester and reiterated in Plains Commerce that when the tribes regulate land use or act either to exclude or act incident to that authority to condition use of land in occupancy, that that is dispositive of tribal jurisdiction. The tribes have jurisdiction. And we think the court can find on that aspect, that power to exclude, the power to regulate land, that there was jurisdiction here, and you don't have to move on to the two Montana exceptions. Because those exceptions were specifically designed to apply to the circumstances where you have conduct on non-Indian fee land where there is no power to exclude. Is that it? I guess the question we're wrestling with is what is it that the exception applies to? I thought the exception applied to the general rule that tribes have no civil authority over non-Indians on the land. Right. The Supreme Court has stated as a general proposition that the sovereignty of tribes is limited. Right. So they don't automatically, because conduct is within a reservation, have regulatory authority. But in Plains Commerce, the court specifically noted that there are three bases for expressing tribal sovereignty that remain. But where you get to Plains Commerce, isn't that what Montana articulated two exceptions to? Well, if you look at Montana's exceptions, they are specific to the circumstance of non-Indian fee land. They had already ruled, Montana upheld this court in ruling that as to tribal lands, lands that are held by the tribe, the regulations, the hunting and fishing regulations there, were perfectly proper and properly applied to non-members of the tribe. And then the court went on and said, well, what do we do with respect to non-Indian fee lands? And again, in Plains Commerce, in explaining Montana, what the court said is there were three remaining bases for tribal sovereignty. Land management, tribal land management, which relates all the way back to Worcester, then protection of internal relations within the tribe, and then protection of tribal self-government. And what the court explained in Plains Commerce is the Montana exceptions, because what Montana was dealing with was non-Indian fee land. You didn't have the sovereign interest in managing actually tribal land. You had situations where you had people on fee land, non-Indian fee land. And what Montana was saying was even in that circumstance, there are circumstances where the use or activities on that land will implicate internal relations of the tribe with tribal self-government. And the example that was given in Plains Commerce is suppose you've got non-Indian fee land, you've got a business operating on that land, and that business employs Indians, members of the tribe, or that business has a contract with the tribe. What the court is saying in Montana and in Plains Commerce, if there's those sorts of consensual relationships, those contract relationships, even if it's on non-Indian fee land, that that can be regulated by the tribe. But it stands the whole history of tribal sovereignty and the law and tribal sovereignty on its head to say you need that sort of advanced consensual contractual relationship in order to exercise the power to exclude, the power to set the conditions on which non-members will possess and occupy land. And this case should have been a pretty straightforward and simple application of that principle because you had Mr. Johnson occupying, possessing tribal land through the exclusion of the tribe, preventing the tribe from gaining any economic benefit from the land. And the law is consistent that tribes have that regulatory authority. The courts have also, in analyzing tribal court adjudicatory authority, have said it is, has assumed it is coextensive with the regulatory authority. And as we explained in our brief, the tribal ordinances and laws that govern the tribal court are essentially incidents of the tribe's authority to regulate. And so the analysis is the same. What they were doing in the tribal court action was to enforce conditions on land use, which is to say you can't be here if you don't have a lease. You can't be here if you don't have our permission. And if you damage our land when you're here without a lease, without our permission, we have the authority. And that's just so fundamental in the history of tribal law. What do we do with our footnote five in Elliott v. White Mountain Apache Tribal Court where Judge Graber writing for our court indicated that it's an open question whether the tribal courts have jurisdiction to the same extent that a tribe may regulate nonmember activity. That was relying on Hicks seeming to suggest that even the Supreme Court hasn't resolved that question. The Supreme Court, as we noted in our amicus brief, both this court and the Supreme Court have said that. It's an open question. We also explain in our brief why it doesn't make sense to draw a distinction because what we're talking about is the authority to place conditions on use. The department's position is that this panel should nonetheless resolve that open question, even though the Supreme Court and another panel of our court have not. Well, what the Supreme Court and the other panels of this court have done is to assume it and to use that regulatory framework of Montana and the other cases that are out there, Plains Commerce, and have looked at those cases that deal with authority, sovereign authority writ large. Why do we need to answer that question in this case if we're dealing with activity on tribal land? Well, because the case is about tribal court jurisdiction. It's about whether the tribal court can exercise its jurisdiction. So it's necessarily a case like Nevada v. Hicks or a case like Elliott where it's about what the tribal court is doing as opposed to whether the tribe can pass a tax or can pass a regulation that says when you can come in. I mean, there's, you know, the one question, can the tribe do this, as in Marion where they impose a tax on it. But why do we need to reach the question if we find that it falls within one of the exceptions to Montana? Well, again, what we're saying is the Montana framework, not only the exceptions, but what Montana recognizes up front with respect to land that's owned by the tribe, apply and should apply to the issue of when the tribal court has jurisdiction in addition to when the tribe has jurisdiction to determine, to issue rules about who may come in and how they can use our land. I mean, in this case, the lease initially was the rule. I mean, it was the condition on how you can use and possess the land. The lease went away. Then what the rules were were the rules of the, you know, of the tribal ordinances and the laws of the tribe that say you can't possess our land without our consent. So we do have to, as I was trying to explore with the courts counsel, we do have to draw a distinction between conduct that occurred prior to the expiration of the lease and conduct that occurred after because the analysis is different, is it not? Not with respect to sovereign authority, Your Honor, because before the expiration of lease, the lease is the instrument by which the tribe set the conditions for use of the land. And that's an incident of the regulatory authority, the condition on member use. When it goes to court, tribal court, to enforce those conditions, it's, again, the tribe enforcing the conditions it set on the use of tribal land, which, again, we believe that the same test should apply. The tribe itself contained and expressed consent by the corporation to the jurisdiction of the tribal court in the event that there was a dispute over the lease. The question is what do we do with Mr. Johnson? Well, the tribe, actually, the provision you're talking about is Article 34, and it says that the corporation and all agents, employees, I can't remember the list, but it says everybody that's there is going to be subject to tribal law when they're there, and it's subject to tribal law, and we believe it does apply to the tribal courts. But, again, the question of inherent sovereignty starts first, and then the question under the lease is did the lease take it away? Obviously, if the lease is saying, no, no, you're subject to tribal law, the lease didn't take it away. But you have to answer the inherent sovereignty question first, and that doesn't depend on what's in the lease terms, where in the lease terms may potentially be. So if they had not had that in there at all, you would still come to the same conclusion? Yes, Your Honor, with respect to inherent sovereignty, absolutely. All right. But then you look to that section, your argument is you look to that section to see if it, you know, if there was any modification of that. The lease is relevant because Waterwheel argues that what they really did with the lease was to agree to some sort of federal dispute resolution, which we submit doesn't exist. There is no obligation or dispute resolution provisions as part of the federal regulations. But that's right. You would look to the lease after you determine there is inherent sovereignty because of the connections, because of the land use, and then you look to the lease to say, well, did somehow the tribe agree to waive the exercise of its sovereign authority, and we submit it did not. And so in answer to Judge Tallman's question, you're also saying it doesn't matter if it's activity before their trespassers or not? Not for determining inherent sovereignty. It might. There are provisions in the lease that talk about defaults that may apply differently to the period when the lease is in effect and to the post-period. After the lease expired, we submit that the default provisions, Article 21, don't apply at all. Now, if this is, I mean, we've been dealing with Indian sovereignty issues for some time. If this is so clear, why hasn't the Supreme Court, you know, both in this court and the Supreme Court? So you're essentially asking us to go where no one has gone before. But you're sure we're right, right? Not quite, Your Honor. The questions of tribal sovereign authority, regulatory jurisdiction writ large, has been addressed over and over and over again. The one specific question that was reserved was should we make a distinction for adjudicatory jurisdiction? And so far the courts have said no, we don't need to make that distinction, and we just submit that's right. There's no reason to make that distinction because when a tribe exercises its adjudicatory jurisdiction, it does so pursuant to its regulations, its ordinances, and the things that the tribe passes as a matter of rules to govern their land. So it's all incident to the same sovereign regulatory authority. So is there, from your perspective, is there a way that this court can decide this case more narrowly and still be correct? More narrowly than, I think the easiest way is the power to exclude, which has been dealt with for years and years and years. When you get into what does the consensual relationship test mean, that has often been difficult to apply because you're dealing with non-Indian fee lands, and then there you're trying to determine whether there is a sufficient nexus to tribal self-government or internal relations such that that particular contractual relationship can be adjudicated. So the most simple and straightforward way to deal with this is to say, look, this is the fundamental issue about control over tribal land, which this court has never questioned or the Supreme Court has never questioned. Counsel, I let you go way over your five minutes. Thank you so much, Your Honor. Thank you very much. Unless the panel has any other questions, we'll hear from, is it Mr. Whittlesley? Yes, Your Honor. Dennis Whittlesey for Waterwheel and Robert Johnson. I have to say, wow, I'm surprised that Montana doesn't apply to this case or that Montana applies the ways that I've heard because I think the case law is to the contrary. And indeed, just quickly addressing the question of Indian land versus fee land, this court in Philip Morris in 2009 said it's the membership of the unconsenting party, not the status of the real property, that counts as a primary jurisdictional fact. And I think we're still there. How do you square that, though, with the Supreme Court's statements in Montana and elsewhere that the ownership of the land is very important and in some instances may be dispositive? Well, in some instances may be, but not always. But in our case, we do have a lease. Let's don't forget there is a lease. And I would note that in the briefing there has been discussion of, and indeed we attached as an addendum to our reply brief a copy of the tribe's law and order code that was adopted in 1974, the year before our lease was executed. And the predicate for the jurisdiction that the tribal court's attorney, prior attorney, Mr. Volman, laid was that, well, Waterwheel did accept crit jurisdiction for over all of the activities by virtue of section 101. But section 101 of the property law and order code, which was in effect at the time this lease was signed and was adopted specifically under section 34 of the lease addendum, says that the provisions of this code are subject to the limitations, restrictions, or acceptance imposed by or under the authority of the Constitution of the United States or the laws thereof. So we respectfully submit that if you return to the lease where the pursuant to the regulations, part 131 was the reg in effect at the time this lease was executed up until, as the courts noted, 2000 or 2001, the regulations imposed all of the enforcement activity upon the secretary and even provided that appeals from any decisions of the secretary would be ‑‑ appeals would be from decisions made by BIA officials pursuant to the regulations. And when the ‑‑ But I guess the question that I was exploring with Mr. Smeltzer was, you know, is that exclusive? I guess your position is that it is, but don't we have to look at the terms of the lease in order to answer that question? Well, I think it is from this standpoint, Your Honor. I think the lease does provide extensive prescriptions for enforcement, and they're always in the hands of the secretary and not in CRIT except in four discrete and identified circumstances. So that we ‑‑ and it starts with written notice, written notice to the lessee of a violation. And you can say, well, but it didn't preclude CRIT from doing it independently, which is what Judge Campbell found. But, again, if you go back to the law and order code, the law and order code, which is the ability which they claim to evict or to impose jurisdiction, tribal court jurisdiction on the water wheel and Mr. Johnson, it says that whatever we do here is subject, the imposition of jurisdiction is subject to, if you will, federal regulation. And federal regulation in this case prescribed the enforcement vehicles. So that we respectfully submit that the lease does control and that although Judge Campbell very, and very frankly thoughtfully laid out the circumstances, the four circumstances where he saw that CRIT's sovereignty had not been surrendered, we respectfully submit it was surrendered when CRIT entered into the lease as lessor and adopted, specifically said, well, our existing laws apply. But we agreed to that. We agreed to abide by the lease. And so if you say their laws apply, well, their laws say, well, we're going to respect the regulations of the United States. And in this case, this lease was adopted. It's their lease, by the way. It's the federal lease. It's CRIT's lease. It's not our lease. Okay. I think I understand that argument. I have to think about it. But what do we do with both the corporation and Mr. Johnson after the terms of the lease have expired? Now they are trespassers and they are trespassing and conducting exactly the same activities as they did under the lease on tribal land. Well, we go back to the lease does provide that there is a holdover. Now, we require no rights to the property as a result of holding over. That lease does specifically provide that. However, there is a holdover provision in the lease, and the Secretary still has pursuant to the lease when Waterwheel did not vacate the property, that was a breach of a section of the lease. That was a breach. The lease expired. I mean, the tribe alleges that the breach occurred as early as, what, 2000 or 2001. But by its terms, the lease expired at the end of 32 years, did it not? The lease expired, I believe, in 2007. Seven, yeah. But there was a holdover provision, and there was a provision in the case of a default, which was the failure to vacate the property, for the Secretary to enter the property pursuant to the default provisions of Section 21. Your position is that that only applies as to the corporation because Mr. Johnson is not bound by the terms of the lease. That doesn't answer my question about what we do with Mr. Johnson from 2007 on, who, as I understand the term trespass, is a trespasser on the tribe's land. Mr. Rollman. He can't claim any benefit under the lease under your theory, can he? Well, all I know is that when this was explored in an oral argument by Judge Campbell and Mr. Rollman advanced just that theory and he said, well, he's a trespasser and he's liable, the judge said, do you have authority for that proposition, and he did not. So the fact that counsel couldn't ask the question doesn't make it so. Well, we know of none, and they've certainly cited none in their briefs or in their argument. Well, I guess what authority does your client have to be there? He claims on the one hand he wants it both ways. He wants to say, you know, I'm not bound, but then I have a right to be there. But the lease is what gave the right to be there. The failure to vacate was a default, and the default provisions of the lease provide that. Wait, wait, wait, counsel. You can't answer Judge Callahan's question by relying on the lease with regard to Mr. Johnson because your position is he's not bound by the lease. So he can't be a holdover under the terms of the lease. He has no rights to invoke under it, under your theory of the case. Well, no rights to the real property, to the land, to the substance of the lease. Well, how does he claim authority under the lease if your position is that he was never bound by it? Johnson's position was always, and this goes to the judge's question, indeed the Peabody-Cole question too, which was an extension of that. He was there as an agent of the corporation. He was always there. He is bound then as an agent of the corporation by his term? He's a corporate agent, and he's acting as a corporate agent. He never, there's nothing in the record to indicate that Johnson personally consented to tribal court jurisdiction. Well, without regard to the question of consent, let's talk about the law of agency. Are you conceding that Mr. Johnson was an agent of the corporation? He was an executive of the corporation. No, that's not my question, counsel. Was he or was he not an agent? You just said he was, and I'm trying to get a straight answer from you. He's the corporate officer. If as a matter of law that makes him an agent, then he's an agent. All right, and if he is an agent under the terms of the lease, then why is he not bound by paragraph 34? Because he didn't consent to be bound by the terms of the lease. And Judge Campbell addressed that. He said, look, the corporation can execute a lease and can say everybody is going to do that, but that doesn't bind them personally. They might be responsible for their acts as agents of the corporation in some way, but that's not personal consent. They've not consented to tribal court jurisdiction. And Mr. Johnson, every action he took ñ both an agent and after 2007 a trespasser, the issue of consent evaporates at that point, doesn't it? Mr. Johnson's liability was imposed as a sanction, as a discovery sanction. The veil was pierced for the purposes of imposing liability, but as Judge Campbell said, that did not satisfy the first test of Montana. Well, it seems to me the only way that your theory can have any consistency is by importing the subjective intent of Mr. Johnson. And what authority is there for his subjective intent is a component that we look at in evaluating tribal sovereignty issues. His subjective intent was he acted, hundreds of pieces of correspondence as the CEO of Waterwheel. Well, but it seems that he's arguing on some level that, okay, you know, I'm in California and California courts want to bring me to jurisdiction, but I didn't know where I was, so therefore I can't be subject to California jurisdiction. He's not saying that. Well, the subjective intent that seemed to factor into what Judge Campbell said, and he gave weight, what was his subjective intent? Well, the subjective intent is in fact memorialized in the term of the lease, that he would be dealing with the U.S. in terms of payments of money. He would be dealing with the county of Riverside, California when plans and inspections, plans and designs had to be approved. And he thought that meant he wasn't subject to tribal jurisdiction. Well, he was dealing as Waterwheel in those activities. That goes to Waterwheel's consent. And the same with the right. And the lease says Waterwheel had a right to contract for power with public utilities, and that was denied him. But Johnson at all times, his intent was, as he expressed it in the declarations, his intent was he was dealing with those people. But the intent is in the lease. It's not just in the declarations. And he was dealing with everybody, though, in his capacity as Waterwheel's CEO. There is nothing in the record that shows Robert Johnson ever consented to tribal court jurisdiction. I guess one of the problems I have with your position is we don't really know what Mr. Johnson was vis-à-vis the corporation because he didn't cooperate in the discovery. And as a result of that, we have no idea whether Waterwheel was a bona fide corporation which observed all the corporate formalities or whether it was simply a shell that Johnson used in order to mask his conduct on the tribal land. And now he wants us, through your argument, to assume that it was all bona fide. And we have findings of fact from the trial court that this is not a bona fide corporation by virtue of his defalcations during discovery. So why should we credit the argument that you're making to us and give him the presumption that he was the chief executive officer of a bona fide corporation? Well, if the sanction went to liability, it did not go to jurisdiction. It still leaves unresolved the question of jurisdiction and nowhere other than Johnson. Let me take my hypothetical a little further. Assume that we uphold the finding of the tribal court and hold that this was not a bona fide corporation. That leaves Mr. Johnson as an individual conducting business activities on tribal land. And I guess we're back to he's a trespasser, and why shouldn't he be subject to the jurisdiction of the tribal court under those circumstances? The trespass was derivative of the eviction action. So that if Critt wanted to pursue tort actions, that would be a different case. This was a derivative tort from the eviction itself, and the eviction action was pursuant to eviction, pursuant to the lease. That was their action. That was their lawsuit, not ours. Eviction from the lease. And we're saying that that's fine, but it has to be pursuant to the terms of the lease because the lease was very definite in prescribing the manner in which violations would be dealt with. But the tort of trespass might be a different lawsuit, but that's not the lawsuit that we have here. I think my time is just about up. All right. Unless you have any other questions? All right. Thank you very much, counsel. Let's see. I'll give you a minute or so on rebuttal if you would like. I'm not really sure that I have much to add unless the Court has questions. The lease is perfectly clear, it seems to me. There are more than four instances of where the tribe has asserted authority over the lessee and retains it, and it goes from Mr. Johnson may have thought he was dealing with Riverside County on building matters, but the lease specifically says that he had to get the consent of the tribe for all plans and construction plans. Well, do you agree with Mr. Smelser? On everything. On any particular issue? I agree basically with Mr. Smelser. I believe that Marion and the power to exclude transcends everything, and that you need not necessarily get to Montana here. Okay. Well, if you have nothing else, then thank you all for a very spirited argument. The case just argued is submitted. Let's see. The next case on the calendar, Boddy v. Lennon, number 09-17408, is submitted.
judges: Conlon, Tallman, Callahan